UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : |
|  | : |
|  | : Crim. No. 25-436 (MCA) |
| v. | : |
|  | : |
|  | : **Oral Argument Requested** |
| CESAR HUMBERTO PINA | : |
|  | : |

**MR. PINA'S REPLY TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF IN *UNITED STATES V. GIRAUD* OPPOSING THE MOTION TO BAR ALINA HABBA FROM SUPERVISING THAT PROSECUTION**[1]

---

[1] Mr. Pina files this reply pursuant to the August 12, 2025 Order (ECF 57) transferring this matter to the Honorable Matthew W. Brann of the United States District Court for the Middle District of Pennsylvania, and pursuant to the Court's August 13, 2025 Order permitting Mr. Pina to "submit a Reply brief responding to the Government's Opposition to the Motion to Bar Alina Habba from Supervising the Prosecution in *United States v. Giraud*, No. 24-CR-0768 (D.N.J.), Doc. 127, as if it were a partial opposition to Mr. Pina's motion." (ECF 60).

1

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................2

I. THE GOVERNMENT'S SUPPLEMENT IS INCORRECT BECAUSE SECTION 546 DOES NOT PERMIT APPOINTMENTS TO BE STACKED EVERY 119 DAYS...................................................................2

II. THE GOVERNMENT'S THEORY OF WHO MAY ASSUME THE ACTING LEADERSHIP ROLE IS INCORRECT BECAUSE ONLY THE "FIRST ASSISTANT" IN PLACE AT THE TIME THE VACANCY ARISES MAY ASSUME THE ACTING ROLE ........................4

III. THE GOVERNMENT IS INCORRECT IN CLAIMING THAT SECTION 515 ENABLES MS. HABBA TO SERVE AS UNITED STATES ATTORNEY IN EVERYTHING BUT NAME...............................9

IV. THE STATUTORY FRAMEWORK DOES NOT, AS THE SUPPLEMENT CLAIMS, HAMSTRING THE PRESIDENT'S ABILITY TO APPOINT U.S. ATTORNEYS. ..............................................13

 CONCLUSION................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*In re Persico*, 522 F.2d 41 (2d Cir. 1975) .................................................................11

*L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020) ............................................5

*N.L.R.B. v. SW General, Inc.*, 580 U.S. 288 (2017) ........................................ 8, 9, 14

*United States v. Crosthwaite*, 168 U.S. 375 (1897) .............................................9, 11

*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) ........................11, 12

**Statutes**

5 U.S.C. § 3345 ................................................................................................ *passim*

5 U.S.C. § 3346 ...........................................................................................................14

28 U.S.C. § 3348 .........................................................................................................14

5 U.S.C. § 3349a .........................................................................................................14

28 U.S.C. § 515 .......................................................................................................9, 11

28 U.S.C. § 541 ..................................................................................................... 10, 12

28 U.S.C. § 546 ................................................................................................ *passim*

**Other Authorities**

Memorandum for William P. Tyson, Director, Exec. Off. for U.S. Att'ys, from Samuel A. Alito, Jr., Dep. Asst. Att'y Gen., Off. of Legal Counsel (Nov. 13, 1986) .........................................................................................................................4

S. Rep. No. 105-250, (1998) .................................................................................6, 7

Stephen Migala, *The Vacancies Act and a Post-Vacancy First Assistant of USCIS* (Sept. 9, 2019) .........................................................................................................6, 7

**Constitutional Provisions**

U.S. Const. Art. II, § 2 ...............................................................................................10

**INTRODUCTION**

The Government's position on U.S. Attorney appointments, if boiled down to its basic argument, is that the Attorney General has an "unqualified grant of authority" to appoint any individual as U.S. Attorney whenever she chooses, and for whatever length of time she proscribes. Gov't Supp. Br. at 15. This theory—based on Congress having vested the Attorney General with "all functions" to carry out her job as head of the DOJ—is fundamentally incompatible with the text of the statutes at issue, the intent of Congress, and broader principles of separation of powers. The Government's position has no limiting principle and would allow the Executive Branch to trample upon Congress's "advice and consent" role in the appointments process.

In its Supplemental Brief, the Government maintains three arguments that overlap between the Girauds' motion and Mr. Pina's. Each position the Government asserts is wrong on the law and would carry staggering implications. First, if the Attorney General could "stack" an unlimited number of Interim U.S. Attorneys under Section 546, the statutory limitations on appointing both interim and full-time U.S. Attorneys would be functionally meaningless. Second, if Section 3345 allows the Attorney General to install someone as the Acting U.S. Attorney by naming her "first assistant" months after a vacancy opens, the FRVA fails to limit the precise maneuver that it was enacted to extinguish. Third, if the Attorney General can

1

delegate to a "special attorney" supervisory authority over any U.S. Attorney's Office in the country, the Senate's role in the appointments process is nothing more than an empty ritual for those who seek additional "gravitas." The Government's sweeping arguments are rooted in neither text nor history.

Because Ms. Habba had no authority to bring this indictment and has no authority to continue to supervise or be involved in the prosecution of this case, Mr. Pina respectfully requests that this Court dismiss the indictment against him and enjoin Ms. Habba from participating in any future prosecutions.

**ARGUMENT**

### I. THE GOVERNMENT'S SUPPLEMENT IS INCORRECT BECAUSE SECTION 546 DOES NOT PERMIT APPOINTMENTS TO BE STACKED EVERY 119 DAYS

The Government seems to believe it has discovered a clever Section 546 loophole: if the Interim U.S. Attorney resigns before her 120-day appointment expires, the clock resets, the Attorney General gets another interim pick, and the district court is *never* able to invoke its Section 546(d) authority. But this theory runs afoul of plain statutory language and legislative history, and it has ridiculous practical implications.

In its supplemental brief, the Government hangs its hat on the fact that "Mr. Giordano and Ms. Habba each resigned *before* their appointments expired after 120 days, and thus the District Court's appointment authority was never triggered."

2

Gov't Supp. Br. at 14 (emphasis in original). In the Government's view, Ms. Habba's resignation on day 118[2] prevented the District Court from exercising its authority to appoint under Section 546 (d). But this interpretation runs contrary to the plain language of the statute, which evinces Congress's intent for the district court's appointment power to be triggered by the conclusion of the Attorney General's *temporary* appointment window.

The Government does not hide from the fact that its argument allows for the Attorney General to make "*first, second, or more*"  Interim U.S. Attorneys appointments for 119-day terms. Gov't Supp. Br. at 14 (emphasis added). The Government's interpretation of Section 546 has no stopping point—an Interim U.S. Attorney could resign on day 119, and that same person could be reappointed by the Attorney General for another 119 days, then another 119 days, and so on. The Government does not contest that if Ms. Habba stayed in office for 120 days instead of 118 days, the District Court's appointment authority would have been triggered. *See id.* at 14.  An Interim U.S. Attorney's resignation a few days before the 120-day statutory limit cannot function to completely rework the statutory allocation of power that Congress intended.

---

[2] For the sake of responding to this argument, Mr. Pina is accepting the Government's claim that Ms. Habba was appointed by the Attorney General on March 28, 2025, although Mr. Pina maintains that Ms. Habba was appointed by President Trump on March 24, 2025.

3

The position the Government now stakes directly contradicts the OLC's longstanding interpretation of Section 546. As then-Deputy Assistant Attorney General Alito wrote in a 1986 OLC memo, the Attorney General cannot "make another appointment pursuant to 28 U.S.C. § 546(a) after the expiration of the 120-day period. The statutory plan discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than the Attorney General." Exhibit A at 3 (Memorandum for William P. Tyson, Director, Exec. Off. for U.S. Att'ys, from Samuel A. Alito, Jr., Dep. Asst. Att'y Gen., Off. of Legal Counsel (Nov. 13, 1986)).[3] If Congress intended for the Attorney General to be able to indefinitely fill U.S. Attorney positions through Section 546, it would not have included (1) a time limit for the Attorney General's appointment, and (2) a statutory mechanism that transfers the ability to appoint to district courts upon expiration of that time limit.

II. **THE GOVERNMENT'S THEORY OF WHO MAY ASSUME THE ACTING LEADERSHIP ROLE IS INCORRECT BECAUSE ONLY THE "FIRST ASSISTANT" IN PLACE AT THE TIME THE VACANCY ARISES MAY ASSUME THE ACTING ROLE**

The Government argues that under subsection 3345(a)(1) Ms. Habba "did not have to already be the First Assistant" to "assume[] the role of Acting U.S. Attorney." Gov't Supp. Br. at 4. The Government's position is wrong because, as explained in

---

[3] Since the submission of Mr. Pina's Motion to Dismiss (ECF 51), counsel has obtained a copy of the Alito memorandum, which is attached as Exhibit A.

4

Mr. Pina's moving brief, it is inconsistent with the text and structure of the FRVA, as well as the history that led to its enactment. *See* Pina MTD at 18–27. To the extent the Government attempts to refute these points, it offers only a strained textualist argument and an unsupported (and irrelevant) assertion about "longstanding" Executive Branch practice.

Focusing narrowly on the text, the Government relies extensively on the notion that subsection 3345(a)(1) identifies the "first assistant to the *office* of such officer" rather than the first assistant to any particular *officer*. Gov't Supp. Br. at 5 (emphasis in original). To the Government, the statute's depersonalization of the first assistant role suggests that Congress wanted to allow the Attorney General to instill as Acting U.S. Attorney a person who never previously served in a U.S. Attorney's office—either as first assistant or in any other capacity. But there is a more logical and precise explanation for Congress's choice of words. As a D.C. district court explained in *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 26 (D.D.C. 2020), there is a difference between the "U.S. Attorney's assistant" and the "assistant U.S. Attorney."[4] The phrase "first assistant to the office" merely clarifies that the person who shall serve as Acting U.S. Attorney is the top deputy, not the personal aide to any particular U.S. Attorney.

---

[4] "To borrow from a long-running riff on the television show *The Office*, there may well be a difference between one who serves as 'the assistant regional manager' and 'the assistant to the regional manager.'" *Cuccinelli*, 442 F. Supp. 3d at 26 n.8.

The legislative history behind the FVRA's enactment confirms this reading. "Critically, the precise question of whether the first assistant to a PAS office can be installed post-vacancy was answered in the negative." Stephen Migala, *The Vacancies Act and a Post-Vacancy First Assistant of USCIS*, at 20 (Sept. 9, 2019), https://ssrn.com/abstract=3450843. The FRVA Senate Report states:

> The statutory language refers to "[t]he person serving as an acting officer as described under section 3345." The Committee chose this wording deliberately. That is the only person eligible to be the acting officer…. This provision allows the office to be temporarily filled by "the person" who was originally eligible to be the acting officer *at the time the vacancy arose.*

S. Rep. No. 105-250, at 14–15 (1998) (emphasis added).

As the most comprehensive scholarly work analyzing subsection 3345(a)(1) explains, "This was not just the view of the authors or one party. Even the Minority Views in the Senate Report confirmed the exact same understanding that post-vacancy first assistants were not allowed." Migala, *The Vacancies Act and a Post-Vacancy First Assistant of USCIS*, at 21. The Senate Report's Minority portion reads:

> Section 3345(a)(1) of the bill can be read to provide that, aside from another Senate-confirmed Presidential appointee designated by the President, only the "first assistant" *to the particular Senate confirmed officer who dies, resigns or is other[wise] unable to perform the functions and duties of the position, can be an acting officer.*

S. Rep. No. 105-250, at 34 (1998) (Minority Views) (emphasis added). "Congress was expressly told and understood that it was voting to *not* allow post-vacancy first assistants. This understanding was itself unremarkable, because it simply continued

6

the same interpretation and practice of the prior 130 years under the Vacancies Act." Migala, *The Vacancies Act*, at 21. Though the phrase "first assistant to the office" was departure from the prior Vacancies Act, which used the phrase "first assistant to the officer," the Senate Report explained that this change was cosmetic:

> The Committee does not establish a definition of "first assistant." That term has a long history of use in the Vacancies Act. As under current law, the term "first assistant" is used to refer to the first assistant to the "officer." However, *the practice under current law, which would be continued by this bill*, is that the first assistant is *actually the first assistant to the vacant office*.

S. Rep. No. 105-250, at 12 (1998) (emphases added).

The Government does not address this history. Rather, it seeks to buttress its reliance on the phrase "to the officer" with an unrelated argument about the structure of the FVRA. It is significant, in the Government's view, that "Congress explicitly imposed backward-looking eligibility requirements" elsewhere in Section 3345 but not in subsection 3345(a)(1). Gov't Supp. Br. at 5. The Government points out that in subsection 3345(a)(3)(A), for example, Congress made ineligible for an Acting designation certain officials who had not served in the agency *for at least 90 days in the year preceding when the vacancy arose*. 5 U.S.C. § 3345(a)(3)(A).

But the Government's threadbare argument ignores altogether the obvious reason why subsection 3345(a)(1) lacks the 90-day limitation that subsection (a)(3) imposes. As the Supreme Court explained, "The former is mandatory and self-executing: The first assistant '*shall* perform' acting duties. The latter, by contrast,

7

speaks to who 'may not' be an acting officer." *N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 303 (2017) (quoting 5 U.S.C. § 3345). Because subsection (a)(1) is triggered *only* at the moment the vacancy arises, a 90-day limitation would threaten to create a leadership vacuum in certain unforeseeable instances. If the Senate-confirmed U.S. Attorney died two-and-a-half months after naming a new first assistant, a 90-day limitation in subsection (a)(1) would preclude anyone from automatically assuming the Acting U.S. Attorney role. Such a constraint would prevent the "self-executing" mechanism from ever operating. Because subsection (a)(3) limits who the President may *affirmatively* pick as Acting head, there is no such concern that the 90-day limitation in that subsection would result in a leadership void or throw sand in the gears of any automatic mechanism.

Lastly, the Government relies on post-enactment practice to support its boundless interpretation of the phrase "first assistant" in subsection 3345(a)(1). It argues that "first assistant" cannot possibly mean only the first assistant at the time of the vacancy, because such a limitation would "upend settled Executive Branch practice." Gov't Supp. Br. at 6. According to the Government, "Administrations of both parties have routinely, at the start of a new Administration, temporarily filled PAS positions that become vacant before noon on Inauguration Day by appointing new first assistants after noon on Inauguration Day. Those first assistants, by automatic operation of § 3345(a)(1), then serve in an acting capacity." *Id.* But the

8

Government provides no examples of this supposed "longstanding practice." *Id.* Even taking the Government at its word, the Supreme Court has expressly disclaimed reliance on the FVRA's post-enactment practice:

> "[H]istorical practice" is too grand a title for the [Government's] evidence. The FVRA was not enacted until 1998 . . . and the 112 nominations that the [Government] cites make up less than two percent of the thousands of nominations to positions . . . in the years since [the FVRA's] passage. In this context, Congress's failure to speak up does not fairly imply that it has acquiesced in the [Government's] interpretation.

*SW General*, 580 U.S. at 308. The only difference from *Southwest General* is that here, the Government cites zero examples rather than 112.

### III. THE GOVERNMENT IS INCORRECT IN CLAIMING THAT SECTION 515 ENABLES MS. HABBA TO SERVE AS UNITED STATES ATTORNEY IN EVERYTHING BUT NAME

As a failsafe, the Government attempts to invoke Section 515 to delegate to Ms. Habba a degree of authority that no "special attorney" has ever enjoyed. The Government argues that subsection 515(a), which provides that the Attorney General may allow a specially-appointed attorney to "conduct any kind of legal *proceeding*," enables the Attorney General to functionally appoint Ms. Habba to—at a minimum—lead the U.S. Attorney's Office in New Jersey. This theory has no mooring in history or tradition, despite the fact that "special attorney" statutes have existed since the nineteenth century. *See United States v. Crosthwaite*, 168 U.S. 375, 376 (1897). A "*proceeding*" is not the same as an "*office*."

9

In the Government's view, Section 515 gives the Attorney General unbridled power to delegate the authority of a United States Attorney to whomever she wants for as long as she wants. In essence, the Government believes that "the crucible of Senate confirmation" does not truly limit who may exercise the powers of a United States Attorney; it is merely a ritualistic encumbrance that provides "additional gravitas" to those who endure it. Gov't Supp. Br. at 23. That cannot be the constitutional or statutory significance of "advice and consent." *See* U.S. Const. Art. II, § 2; 28 U.S.C. § 541.

The Government asserts that the "special attorney" statute is a workaround that enables the Attorney General to confer upon Ms. Habba all of the authority of a U.S. Attorney without any of the constraints. *See* Gov't Supp. Br. at Sec. II. A U.S. Attorney must be nominated by the President and confirmed by the Senate. *See* 28 U.S.C. § 541. An Interim U.S. Attorney may serve for no more than 120 days. *See* 28 U.S.C. § 546. And an Acting U.S. Attorney, who may serve for no more than 210 days, must have been serving in a specified government position prior to assuming that role. *See* 5 U.S.C. § 3345. But the Government claims that under Section 515 delegation, Ms. Habba may inherit the powers of those positions without facing any of the filtering mechanisms or time constraints that accompany those formal titles.[5]

---

[5] To be sure, the Government provides the hollow caveat that a "special attorney" may not inherit any "nondelegable" functions of the U.S. Attorney's Office. *See* Gov't Supp. Br. at 17–21. But it is careful not to identify a single function that could be conceived as nondelegable. In its view,

10

The Government does not point to any past "special attorney" in history who has exercised the awesome powers that Ms. Habba now claims under that designation. Nor could it. Canvassing the caselaw reveals only special attorneys whose roles were more confined than Ms. Habba's by several orders of magnitude. Though these cases reveal special attorneys "with varying degrees of authority," each was of those special attorneys was assigned a narrow role subject significant oversight. *United States v. Trump*, 740 F. Supp. 3d 1245, 1275 (S.D. Fla. 2024), *appeal dismissed*, No. 24-12311, 2024 WL 6081345 (11th Cir. Nov. 26, 2024) (citing *Crosthwaite*, 168 U.S. at 376 (describing a "special assistant" whose authority was largely limited to aiding the U.S. Attorney, to whom he reported)); *In re Persico*, 522 F.2d 41, 63 (2d Cir. 1975) (describing a special attorney assigned to the "Strike Force office" investigating organized crime as existing in a "tight bureaucratic hierarchy controlled by the Attorney General" and "under virtually constant specific direction and control").

Under the Government's reading of Section 515, the passage of Section 546 was an exercise in futility. There is no reason for the Attorney General to ever invoke her Interim appointment authority under Section 546, which is time-limited, if she can instead use Section 515 to anoint a "special attorney" in whom she can delegate

---

the "nondelegable functions" limitation is a theoretical constraint but not a practical one, as it would not prevent Ms. Habba from supervising every Assistant U.S. Attorney and prosecution in the District of New Jersey, or, theoretically, the country.

11

the same degree of control forever. It is not as though an "Interim" U.S. Attorney would arrive with some additional benefit or, in the Government's words, "gravitas" due to Senate confirmation. Gov't Supp. Br. at 23.

If this Court is inclined to adopt an interpretation of Section 515 that confers unlimited authority to a "special attorney," it must confront the constitutional implications of that position. Under the Appointments Clause, an inferior officer seeking to exercise the powers that Ms. Habba claims "can be appointed and confirmed through the default method prescribed in the Appointments Clause, as Congress has directed for United States Attorneys throughout American history, *see* 28 U.S.C. § 541, or Congress can authorize [her] appointment through enactment of positive statutory law consistent with the Appointments Clause." *United States v. Trump*, 740 F. Supp. 3d at 1253. There is no alternative mechanism for wresting control over an entire U.S. Attorney's Office. To be clear, this Court need not define the precise contours of the power that a "special attorney" may exercise—either statutorily or constitutionally—under Section 515. It is enough to say that for both purposes, that power falls short of the authority to be *the* U.S. Attorney for a district, supervising every attorney and prosecution in the District of New Jersey.

## IV. THE STATUTORY FRAMEWORK DOES NOT, AS THE SUPPLEMENT CLAIMS, HAMSTRING THE PRESIDENT'S ABILITY TO APPOINT U.S. ATTORNEYS.

The Government's suggestion that the President's power is improperly constrained due to the "proposed *lifetime ban*" for Ms. Habba, and that a person (here, Ms. Habba) "is *forever barred* from such service if the President ever submitted a nomination in the past, or continues to be barred once a nomination is withdrawn" (Gov't Supp. Br. at 9 (emphases added)), is a tortured distortion of the limitations imposed on Ms. Habba and the President, which are minimal. To state the obvious, Ms. Habba is not "barred" or "banned" from serving as U.S. Attorney— she simply needs to obtain Senate confirmation. And the President has ample lawful mechanisms and options to appoint a temporary or permanent U.S. Attorney of his choosing, so long as it comports with the statutory frameworks set out by Congress. If a nominee cannot be confirmed, the President and that nominee might have to conclude that, in that circumstance, the nominee may not be able to serve as that U.S. Attorney, but that is the way the Constitution and the statutes work.

Here, among the many options available to him, President Trump (through Attorney General Bondi) elected to use 28 U.S.C. § 546 to displace 5 U.S.C. § 3345(a)(1). *First*, on March 3, 2025, the President (through the Attorney General) invoked Section 546 to appoint John Giordano as Interim U.S. Attorney, thereby ending then-Acting U.S. Attorney Vikas Khanna's tenure under Section 3345(a)(1).

13

*Second*, a few weeks later, the President again invoked Section 546 to replace Mr. Giordano with his new pick, Ms. Habba. And if the President desires, he now also has a *third* option he can use: He may direct Attorney General Bondi to perform any function or duty of that Office. 28 U.S.C. § 3348(b)(2). Further, had the President elected to rely on subsection 3345(a)(2) or (3) instead of invoking Section 546, he could have selected a different person to serve as Acting U.S. Attorney for 300 days. *See* 5 U.S.C. § 3349a(b). And he could have extended her tenure for at least *another* 210 days by nominating a U.S. Attorney and submitting that nomination to the Senate. *See id.* § 3346(b)(1).

But, because the President chose to invoke the specific mechanism provided by 28 U.S.C. § 546 to override the "general rule" of 5 U.S.C. § 3345(a)(1), *SW General*, 580 U.S. at 288, Section 546 controls so long as the position remains vacant. Section 3345 does not reemerge to somehow displace Section 546(d), and 546(d) plainly dictates what happens at the end of a Section 546 appointment. While the Government may claim Ms. Habba would suffer from a "forever" or "lifetime" appointment ban, that is due to the President's choices during the appointment process—and nothing more.

**CONCLUSION**

The Government claims it has three workarounds that enable a failed nominee to escape the inconvenience of "advice and consent": (i) allowing the Attorney

14

General to appoint an unlimited number of "Interim" U.S. Attorneys for endless 119-day terms; (ii) if the Attorney General tires of Section 546, using Section 3345(a)(1) to bestow the title of "First Assistant" upon anyone she pleases and empower them to serve as "Acting" U.S. Attorney for at least 210 days; or (iii) if all else fails, the Attorney General may anoint a "Special Attorney" to supervise the Office. Yet the Government does not, and cannot, point to any prior "special attorney" who has exercised the powers that Ms. Habba now claims—and that is because no Attorney General has ever claimed such authority as no statute allows it, and the constitution prohibits it. This Court should find the same here, and enjoin Ms. Habba from supervising his prosecution.

Dated: August 14, 2025                               Respectfully Submitted,

*/s/ Gerald Krovatin*                                */s/ Abbe David Lowell*
Gerald Krovatin, Esq.                                Abbe David Lowell, Esq.
KROVATIN NAU LLC                                     David A. Kolansky, Esq.
60 Park Place, Suite 1100                            Isabella M. Oishi, Esq.
Newark, NJ  07102                                    John P. Bolen, Esq.
T: (973) 424-9777                                    LOWELL & ASSOCIATES, PLLC
F: (973) 424-9779                                    1250 H Street, N.W., Suite 250
gkrovatin@krovatin.com                               Washington, DC 20005
                                                     T: (202) 964-6110
                                                     F: (202) 964-6116
                                                     ALowellpublicoutreach@lowellandassociates.com
                                                     DKolansky@lowellandassociates.com
                                                     IOishi@lowellandassociates.com
                                                     JBolen@lowellandassociates.com

15

*/s/ Norman L. Eisen*
Norman L. Eisen, Esq.
Joshua Kolb, Esq.
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue S.E.
Suite 15180
Washington, DC 20003
T: (202) 594-9958
norman@statedemocracydefenders.org
joshua@statedemocracydefenders.org

## CERTIFICATE OF SERVICE

I hereby certify that the within Reply to the Government's Supplemental Briefing and Supporting Papers were served on this date via ECF on all counsel of record.

*/s/ Gerald Krovatin*
Gerald Krovatin, Esq.
